# SUPREME COURT.

## The People *ex rel.* JOHN S. GILES agt. AZARIAH C. FLAGG.

The fact that witnesses of plaintiff, on the trial of a cause, testified untruly, is not of itself sufficient to justify a court in finding, on a motion for an extra allowance under § 308 of the Code, that the prosecution was unreasonably or unfairly conducted.

The prosecution or defence of an action should not be deemed to be unreasonably or unfairly conducted because testimony which is untrue occurs in it.

To authorize such a conclusion, it should also appear that the party introducing the evidence, knew of its untruthfulness.

Whether in every case the testimony of witnesses to facts, apparently within their knowledge, found by the jury to be untrue, should, for the purpose of an extra allowance, be deemed to be willfully false, *quere?*

In an action of *quo warranto*, brought to try the title to an office, an extra allowance by way of costs to the prevailing party, is not authorized by the Code, § 308.

The provision of the Code in limiting the amount of an allowance to a per centage of the claim, is necessarily confined to cases where the claim is to money, or property having pecuniary value, which can be ascertained. It does not apply to a case where an office is the subject of the claim.

The salary attached to an office, is not the thing claimed within the meaning of that section; the salary being merely an incident to the thing claimed, and only to be had as a compensation for services to be rendered, the per centage cannot be given on the amount of it as being the claim made by the plaintiff.

*New-York General Term, November,* 1857.

*Present,* MITCHELL, ROOSEVELT *and* PEABODY, *Justices.*

THIS is an appeal from an order of the special term, making an allowance by way of costs to the defendant of $450.

The action was in the nature of a *quo warranto*, and was brought to try the title to the office of comptroller of the city of New-York.

A. L. JORDAN, *for motion.*

S. J. TILDEN *and* A. H. GREEN, *opposed.*

By the court—PEABODY, Justice.    The allowance can only be made under § 308 of the Code, which provides that an al-

The People ex rel. Giles agt. Flagg.

lowance of not more than ten per cent. on the recovery or claim for an amount not exceeding $500, and not more than five per cent. for any additional amount, may be made in any case where the prosecution or defence has been *unreasonably or unfairly* conducted.

If a prosecution or defence has been unreasonably or unfairly conducted, an allowance may properly be made. That allowance, however, must be within a certain limit, and must not exceed the rate per cent. of the amount of the claim or recovery.

Two things then must be judicially ascertained to warrant the allowance of any particular sum :

First, the conduct of the prosecution or defence, and that it was unreasonable or unfair.

Second, the amount of the recovery or claim.

And first, has this suit been unfairly or unreasonably prosecuted ? The thing which the plaintiff sought to recover in this suit, was the office of comptroller of the city of New-York. The defendant was in the office performing the duties of it, and the plaintiffs herein claimed that he was wrongfully there, by reason of an erroneous return of the number of votes received by him from a certain district of the city. They also claimed that the relator was the person duly elected, and that the error made in the returns being corrected, these facts would appear. On the trial, the plaintiffs called several witnesses who swore to the condition of the votes claimed by them, according to whose testimony, the defendant was not entitled to the office, and the relator was duly elected to it. These witnesses were contradicted, however, by those of the defendant, and as the result of the suit proved, their testimony was shown to be untrue in fact. The untruthfulness of the testimony of the witnesses for the plaintiff, is the principal ground of the charge of unfairness or unreasonableness in the conduct of the prosecution. It is insisted that the testimony was intentionally untrue, and hence that the prosecution was unfairly conducted. Of course, the argument is, that the plaintiffs, or those having charge of the prosecution, knew, or at least be-

lieved, this evidence to be untrue, and that the conduct of the prosecution was unfair in attempting to accomplish their purposes by the use of it. The testimony may have been all untrue in point of fact, and the *witnesses* even have been entirely free from intentional untruth. The witnesses may have been guilty of intentional untruth, and the party entirely innocent of it; and to make the facts applicable to this question, the three propositions must probably be established. 1. The falsity of the testimony. 2. The intent of the witnesses to testify falsely. 3. The guilty knowledge or complicity of the plaintiffs.

The falsity or untruth of the testimony, was found by the jury, it is said, and for the purposes of this motion, perhaps, the finding should be deemed sufficient to establish this first proposition. The intent of the witnesses is the next. The facts to which they testified, were apparently, and as they said, within their own personal knowledge, and if it be impossible beyond a reasonable doubt that they could have erred innocently, respecting them, we must consider their guilty intent proved; otherwise not. In my judgment, it is not difficult to believe that they may have made an unintentional mistake, which would leave them innocent in their statements, even assuming their statements to be erroneous; but it is not necessary to dwell on this point, as the result of this motion does not depend on it.

The third proposition necessary to the support of this point is, the guilty knowledge or complicity of the plaintiffs or their agents; and the proposition is so extravagant that I shrink from the consideration of it. The plaintiffs themselves (the state) of course could not have been guilty either of subornation of perjury or as accessories to that crime, but their agents and those having charge of the prosecution could have been; and to authorize the finding in the favor of the defendants on this motion, must have been. This is the necessity of the argument of the defendant. If the prosecution was unfairly conducted in the use of that testimony, because it was untrue, it must have been so for the reason that the prosecution knew

its untruth ; for the use of it would not otherwise have been unfair. The prosecution, as I have said, was necessarily conducted by the attorney-general and such counsel and agents as he might call to his aid ; in this case, gentlemen of eminent position, both professionally and personally. To say nothing of the elevated character of these representatives of the state, a momentary glance at the matters themselves which were the subject of proof and disproof, may not be unimportant ; they are certain facts and circumstances attending the canvassing of the votes and preparing the returns of them for a particular district of this city, at or about the time of the election in 1855. There is not a word of evidence given or offered, to show that any mortal connected with the prosecution had, or could have had, any personal knowledge of any one of these matters ; and if we are to find that any one had, we must find it from the intrinsic probability of the case ; and what is the probability that these gentlemen had personal knowledge of those scenes? As I have said, there is no external evidence on the subject ; there is none internal, arising from the nature of the facts themselves, and I am not familiar with any principle which authorizes a legal intendment of the fact.

But it may be said that although the people in their sovereign character are the plaintiffs, and their counsel are by law charged with the conduct of their litigations, still it is the practice to allow the relator to conduct a suit of this kind, and that we ought, in the absence of evidence, to take cognizance of this fact. Suppose, for the sake of the argument, that we do assume this suit to have been conducted by the relator instead of the plaintiffs, in what respect is the above reasoning inapplicable? All that we know of the relator from this case is, that he was a candidate and had a very large vote for the office of the highest pecuniary trust connected with the government of the city of New-York ; and is there any more reason to believe that the witnesses introduced by him committed perjury, or if they did, shall we assume, in the absence of all evidence on the subject, that he or his agents in con-

ducting this litigation knew it and were guilty of moral perjury in the use of their testimony with such knowledge?

Are the facts themselves of a nature to render it at all probable, in the absence of all evidence on the subject, that he or his agents in this suit knew whether this testimony was or was not true? How could they? There is not the least probability, not to say evidence, (which alone would justify action of the court,) that he actually *knew* anything on the subject one way or the other. There is no good reason for imputing any complicity with this false testimony to the prosecution, by whomsoever conducted—none whatever more than occurs in every case where evidence is introduced which the jury decline to believe, which is in effect finding that the weight of evidence is against it. On the contrary, the fact that the witnesses on which the plaintiffs relied, testified untruly, goes to explain the error of the plaintiffs, shows how they were misled into bringing the suit by erroneous information in the premises, and tends strongly to free them of all suspicion of wantonly bringing it without sufficient grounds to justify it in their judgments. It *justifies* them in bringing it, and I see nothing in it at all tending to inculpate either the plaintiffs or the relator, whichever may have had charge of the conduct of this prosecution, but quite the reverse; its tendency is manifestly to exculpate the practical plaintiff, whoever he may have been. The allowance if made, would, to be sure, be recovered against the relator, but he is not therefore to be held to a different measure of responsibility for the manner of conducting this suit. The state also is liable for it if the relator make default in payment, or rather, is in the habit of paying in such cases.

Second. The amount of the claim in this case is not easily to be ascertained, and we see no way in which it can be. The allowance must be not more than a proportionate amount of the claim. Ten per cent. or five per cent. of the amount or value of the office of comptroller for a certain time, is not a matter which we know how to compute. The amount of the salary for the time can be ascertained to be sure, but that is not

the principal object of the action. The office is what is claimed, and the salary is but an incident; and even that is to be had only as a compensation for services to be rendered. No rate per cent. can be fixed in a suit of this kind, and the statute authorizing an allowance is therefore not applicable. It is only applicable in a suit for money, or something having pecuniary value, upon which the rate allowed can be calculated.

The order appealed from must therefore be reversed with costs.